Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued October 22, 2002          Decided February 14, 2003

No. 01-7155

JOSE BEN-KOTEL,
APPELLANT

v.

HOWARD UNIVERSITY,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 00cv01968)

———

*Kay Leslie Ackman* argued the cause and filed the briefs for appellant. *Maxwell O. Chibundu* entered an appearance.

*Daniel I. Prywes* argued the cause for appellee. On the brief was *Sheila Lowery Ferguson*. *Phillip A. Lattimore III* entered an appearance.

———

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

Before: GINSBURG, *Chief Judge*, HENDERSON, *Circuit Judge,* and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Chief Judge* GINSBURG.

GINSBURG, *Chief Judge*: Jose Ben–Kotel, a native of Chile, claims that Howard University denied him employment because of his national origin, in violation of Title VII of the Civil Rights Act of 1964 and of the D.C. Human Rights Act. The district court, holding that Ben–Kotel had not made out a prima facie case of discrimination, granted summary judgment in favor of the University. On appeal Ben–Kotel argues that the district court misconceived the law, improperly weighed the evidence against him, and denied him due process. Because Ben–Kotel did not raise the first argument before the district court, it is forfeit. The other arguments have no merit.

## I. Background

Except as otherwise noted, we recount the facts in the light most favorable to Ben–Kotel. Prior to the Fall 1999 semester Howard University advertised a part-time position for a Spanish instructor, to which Ben–Kotel, a Chilean-born citizen of the United States, responded. Ben–Kotel was at the time a Ph.D. candidate in Spanish Literature at the University of Maryland; he had a master's degree in Spanish and had more than three years' experience teaching Spanish to high school and college students.

After Ben–Kotel telephoned Dr. Aleida Rodriguez, the contact person for the advertised position and a professor at Howard, he had a series of interviews with representatives of the University. In addition to Rodriguez, Ben–Kotel spoke with Dr. Amelia Mondragon, the Spanish language coordinator; Dr. Alphonse Frost, chairman of the Department of Modern Languages and Literatures; and Associate Dean Paul Logan. The conversations with Rodriguez and Mondragon were entirely in Spanish, those with Frost and Logan in English. Rodriguez and Mondragon were pleased with Ben–Kotel's qualifications. Although Frost thought Ben–Kotel's command of English was "flawed," he was nevertheless "quite

comfortable in envisioning him in the classroom teaching [the University's] students."

Dean Logan, whose approval was necessary for Ben–Kotel to be hired, was not so comfortable. Logan claims that in their telephone conversation Ben–Kotel had difficulty communicating in English. In particular, Ben–Kotel "had difficulty expressing himself coherently in English and misunderstood some of the questions which I asked." Ben–Kotel states that he and Logan "fully understood each other."

Following his conversation with Ben–Kotel, Logan informed Frost of his misgivings about Ben–Kotel's facility in English. According to Logan, Frost shared this concern. Logan therefore suggested that Frost "ask existing faculty to teach [extra] courses on an overload basis," and Frost agreed. Frost then contacted Ben–Kotel and told him the University would not be offering him a job. Frost told Ben–Kotel, Mondragon, and Rodriguez that Ben–Kotel was denied the position for reasons related to his accent. The University solicited its existing faculty to teach the extra courses, and some of them, including several instructors who, like Ben–Kotel, are natives of primarily Spanish-speaking nations, did so.

The parties dispute whether the University ever filled the part-time position Ben–Kotel sought. Ben–Kotel claims the position was eventually filled by Kadidia Thiere, an African–American woman. As evidence, he points to Logan's deposition testimony that the University hired Thiere to teach Spanish "I think . . . in 1999." The University asserts that Thiere was hired in 1998 and did not fill the position advertised in 1999; it points to payroll and other personnel records and to three affidavits.

Upon complaining to and receiving a right-to-sue letter from the Equal Employment Opportunity Commission, Ben–Kotel brought an action in the district court alleging discrimination on the basis of his national origin, in violation of both Title VII, 42 U.S.C. § 2000e et seq., and the D.C. Human Rights Act, D.C. Code Ann. § 2–1401.01 et seq., as well as intentional infliction of emotional distress. Following discov-

ery the district court granted the University's motion for summary judgment on all counts. *Ben–Kotel v. Howard Univ.*, 156 F. Supp. 2d 8 (2001). With regard to the Title VII claim, the district court concluded Ben–Kotel had not made out a prima facie case of discrimination because he failed to show that "after [his] rejection, the position remained open and the employer continued to seek applicants." *Ben–Kotel*, 156 F. Supp. 2d at 13 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).

The district court rejected Ben–Kotel's argument that the University must have continued to seek applicants for the position he sought because it hired Thiere to teach Spanish in 1999 after it had refused to hire Ben–Kotel. Instead, the district court found the University had hired Thiere in 1998; Logan's statement that he thought Thiere had been hired in 1999 was unpersuasive in the light of all the evidence indicating otherwise. 156 F. Supp. 2d at 14.

This court summarily affirmed the judgment for the University on the claim for emotional distress. Because the standards applicable to Ben–Kotel's claims under Title VII and under the D.C. Human Rights Act are the same, the sole issue now before the court is whether the district court erred in granting summary judgment on the Title VII claim.

## II. Analysis

Ben–Kotel first argues that the district court erred by requiring him to make out a prima facie case of discrimination, as specified in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Referring to Frost's statements that the University did not hire him because of his accent, he argues that because he "produce[d] direct evidence of discrimination, he may prevail without proving all the elements of a prima facie case." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002). If he must make out a prima facie case, Ben–Kotel maintains the district court formulated the requirement too narrowly. The court should not have required him to show that "after his rejection, the position remained open and the employer continued to seek applicants," *McDon-*

*nell Douglas*, 411 U.S. at 802, but instead should have permitted him to show other circumstances that "give[ ] rise to an inference of discrimination." *Brown v. Brody*, 199 F.3d 446, 452 (D.C. Cir. 1999); *see also Swierkiewicz*, 534 U.S. at 510 ("[T]he prima facie case relates to the employee's burden of presenting evidence that raises an inference of discrimination"). Here the circumstance from which he would have us infer discrimination is that, even if the position did not technically remain open, the need for a qualified employee to teach extra Spanish classes remained, as evidenced by the University's arranging for incumbent faculty members to teach the classes. "There is simply no legal basis," he says, "for holding that an employer[ ] who fills an advertised vacancy with a hitherto non-employee[ ] might be liable for a Title VII violation, but that one who fills the same position from among preexisting employees would never be liable."

We have no occasion to decide whether any of Ben–Kotel's interesting propositions are correct because he did not raise them first in the district court. *District of Columbia v. Air Florida, Inc.*, 750 F.2d 1077, 1084 (D.C. Cir. 1984). On the contrary, Ben–Kotel clearly accepted the applicability of the *McDonnell Douglas* framework and made his arguments within that framework; he did not discuss the significance of "direct evidence" of discrimination at all. Nor did he argue there, as he does here, that the use of existing faculty to teach the classes filled the position in a legally relevant way. *See* Pl.'s Opp. To Def.'s Mot. For Summ. J. at 13 ("The part-time position for a Spanish language instructor remained open the course of the semester"). Finally, Ben–Kotel did not argue to the district court that, if it found the University did not continue to look for someone outside the department to fill the position, then it should have gone on to determine whether the University's actions gave rise to an inference of discrimination in some other way. Although we can entertain a newly-raised issue "where injustice might otherwise result," *Air Florida*, 750 F.2d at 1085, Ben–Kotel has not proffered any reason for our doing so in this case.

Next, Ben–Kotel argues the district court improperly weighed the evidence in a manner unfavorable to him when it

found that Thiere was not hired in 1999. He points out, correctly to be sure, that when there is conflicting evidence of a disputed fact, summary judgment is ordinarily inappropriate. *See Alyeska Pipeline Serv. Co. v. United States Envtl. Prot. Agency*, 856 F.2d 309, 314 (D.C. Cir. 1988) ("[I]f material facts are genuinely in issue ... summary judgment is not available"). In this regard he posits that Logan's testimony suggesting that Thiere was hired in 1999 precludes summary judgment. But that is too facile.

A party opposing a motion for summary judgment must point to more than just "a scintilla of evidence" supporting his position; "there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50 (citations omitted). In this case, Logan's vague statement regarding when he interviewed Thiere – "I think it took place in 1999" – would not support a jury finding that the University hired Thiere in 1999; there is overwhelming documentary evidence – three affidavits and two separate business records – indicating the University hired Thiere on August 16, 1998. The district court was entitled to conclude "that Dean Logan was simply mistaken when he said he *thought* that he interviewed Ms. Thiere in 1999." *Ben–Kotel*, 156 F. Supp. 2d at 14.

Finally, Ben–Kotel claims the grant of summary judgment deprived him of his right to due process of law under the Fifth Amendment to the Constitution of the United States. Ben–Kotel first learned of the affidavits and records concerning the date of Thiere's hire when the University replied to his opposition to its motion for summary judgment; that was the last pleading concerning the motion scheduled by the district court. Ben–Kotel argues that therefore he had no opportunity to rebut the University's evidence; and given such an opportunity, he would have pointed to evidence suggesting that Ms. Thiere may have left the University after August 16, 1998 and been re-hired for the Fall 1999 semester. Read charitably, his brief also suggests the University's

failure to make the records and affidavits available to him earlier violated the rules of discovery.

Ben–Kotel's arguments are unavailing because he did not seek relief in the district court. As the University points out, Ben–Kotel could have apprised the district court of his evidence of Ms. Thiere's possible re-employment by moving for leave to file a sur-reply. The district court routinely grants such motions when a party is "unable to contest matters presented to the court for the first time" in the last scheduled pleading. *Lewis v. Rumsfeld*, 154 F. Supp. 2d 56, 61 (D.D.C. 2001). Ben–Kotel's claim that he was denied due process must fail because he did not take advantage of the process that was available to him. Similarly, to the extent Ben–Kotel argues he was prejudiced by the University's violation of the rules of discovery, his failure to pursue a remedy in the district court precludes our consideration of the issue. *Air Florida*, 750 F.2d at 1084.

### III.   Conclusion

For the foregoing reasons the judgment of the district court is

*Affirmed.*