Commander Daniel W. CHANG, United States Navy, Plaintiff,

v.

DEPARTMENT OF THE NAVY, et al., Defendants.

No. CIV.A.00–0783(PLF).

United States District Court, District of Columbia.

April 22, 2004.

36

Charles William Gittins, Law Offices of Charles W. Gittins, P.C., Middletown, VA, for Plaintiff.

Claes H. Lewenhaupt, United States Attorney's Office for the District of Col, Washington, DC, for Defendants.

## OPINION

PAUL L. FRIEDMAN, District Judge.

This matter is before the Court on defendant's motion for summary judgment and plaintiff's motion for leave to conduct discovery. In this action, plaintiff claims that defendant, the Department of the Navy, violated the Privacy Act, 5 U.S.C. § 552a, when the Navy released information about plaintiff, Commander Daniel W. Chang, to the media and to individual members of Congress. Upon consideration of the parties' arguments and the entire record, the Court grants defendant's motion for summary judgment and denies plaintiff's motion for leave to conduct discovery.

## I. BACKGROUND

On October 22, 1998, Commander Daniel W. Chang assumed command of the USS *Arthur W. Radford.* *See* Compl. ¶ 9; Defendant Dept. of Navy's Statement of Material Facts Not in Dispute ("Def.'s SMF") ¶ 2. On February 4, 1999, plaintiff's vessel was involved in a maritime collision with the *M/V Saudi Riyadh.* *See* Compl. ¶ 18; Def.'s SMF ¶ 3. Although remaining on active duty, Commander Chang was relieved of his command of the *Radford* and was charged with negligent dereliction of duty under Article 92 of the Uniform Code of Military Justice ("UCMJ"). *See* Compl. ¶¶ 20–23; Def.'s SMF ¶¶ 7–8. The Com-

mander, Naval Surface Forces, U.S. Atlantic Fleet offered plaintiff the opportunity either to have the charges adjudicated administratively by way of a non-judicial punishment ("NJP") hearing or to proceed by court-martial. *See* Compl. ¶ 22. Plaintiff opted for a NJP hearing, after which plaintiff received a punitive letter of reprimand. *See* Compl. ¶¶ 22–25; Def.'s SMF ¶¶ 8–9.

Commander Chang contends that the Navy subsequently violated his rights under the Privacy Act, 5 U.S.C. § 552a, by disclosing details of the NJP hearing and the punitive letter of reprimand (1) to the media in the form of a press release ("Press Release") and query responses ("Query Responses") prepared to answer press inquiries, and (2) to members of Congress in the form of an information paper ("Information Paper"). *See* Compl. ¶¶ 38–50.[1] Specifically, plaintiff alleges that officers in the Department of the Navy willfully and intentionally improperly released the results of his NJP hearing to the press through press releases and telephone briefings, and that he did not consent to this release of information. *See id.* ¶¶ 26–27. Plaintiff further alleges that the Department of the Navy willfully, intentionally and improperly disclosed information regarding the NJP hearing in the Information Paper, which was released to members of Congress acting in their individual capacities rather than in their official capacities as committee members. *See id.* ¶¶ 29–31. Plaintiff seeks an award of damages in excess of $2,350,000 for actual damages (loss of income and attorneys' fees to develop a media plan) and nonpecuniary injury and damages (damage to reputation, mental distress, loss of employment opportunities outside the Navy, embarrassment and severe emotional trauma). *See id.* at 14.

On July 28, 2000, the Department of the Navy filed a Rule 12(b)(6) motion to dismiss for failure to state a claim or, in the alternative, a motion for summary judgment. Defendant argued that plaintiff has not asserted a cognizable claim under the Privacy Act because the documents objected to—the Press Release, the Query Responses and the Information Paper—are not maintained in a "system of records" as required by the Privacy Act. *See* Defendant Department of the Navy's Motion to Dismiss or, In the Alternative, Motion for Summary Judgment at 10. Defendant further argued that plaintiff seeks damages that are not compensable under the Act. *See id.* at 12. Finally, defendant argued that even if the information disclosed was protected by the Privacy Act, the disclosure was permissible under the Act and the implementing agency regulations. *See id.* at 14.

Plaintiff filed an opposition to defendant's motion. On that same day, plaintiff also filed a Rule 56(f) motion for leave to conduct discovery, alleging that factually inaccurate and/or misleading statements were propounded by defendant's employees in declarations and that discovery was necessary to obtain information known only to the defendant or third parties. *See* Memorandum in Support of Plaintiff's Motion for Leave to Conduct Discovery at 1.

On December 29, 2000, the Court denied plaintiff's motion for leave to conduct discovery. *See Chang v. Dep't of the Navy,* Civil Action No. 00–0783, Order (D.D.C. Dec. 29, 2000). On May 17, 2001, the Court granted defendant's motion to dismiss for the reasons articulated by Judge Joyce Hens Green in an analogous case.

---

1. Commander Chang also brought suit against Representative James Moran of Virginia for conspiracy to violate Commander Chang's Privacy Act rights, but Congressman Moran was voluntarily dismissed from the suit on August 24, 2000. *See* Plaintiff's Voluntary Dismissal of Claims Against Defendant James P. Moran.

*See Chang v. Dep't of the Navy*, Civil Action No. 00–0783, Memorandum Opinion at 3 (D.D.C. May 17, 2001) (citing *Cummings v. Dep't of the Navy*, 116 F.Supp.2d. 76, 82 (D.D.C.2000) (holding that active duty military members are barred by *Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), from filing actions against the government for Privacy Act violations that are "incident to service")). Plaintiff appealed this Court's decision. On July 8, 2002, the court of appeals remanded the case to this Court after reversing Judge Green's decision in *Cummings*. *See Chang v. Dep't of the Navy*, No. 01–5240, 2002 WL 1461859 (D.C.Cir. Jul. 8, 2002) (citing *Cummings v. Dep't of the Navy*, 279 F.3d 1051 (D.C.Cir. 2002)).

Defendant filed a renewed motion for summary judgment on November 22, 2002, again arguing that plaintiff cannot make out a *prima facie* case under the Privacy Act and cannot demonstrate any actual damages as a result of the offending disclosures. *See* Memorandum in Support of Defendant's Renewed Motion for Summary Judgment ("Def.'s Mem."). On January 3, 2003, plaintiff filed an opposition to defendant's motion, asserting that portions of his Official Military Personnel File were intentionally and willfully released without his consent and that he has suffered compensable damages. *See* Plaintiff's Opposition to Defendant, The Department of the Navy's Renewed Motion for Summary Judgment ("Pl.'s Opp.") at 1. Plaintiff also filed a second Rule 56(f) motion for leave to conduct discovery. The Court denied that motion by Order of September 30, 2003.

## II. DISCUSSION

### A. Standard of Review for Summary Judgment

Summary judgment shall be granted if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits or declarations, if any, demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c). Material facts are those that "might affect the outcome of the suit under the governing law...." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When considering a summary judgment motion, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255, 106 S.Ct. 2505; *see also Washington Post Co. v. United States Dep't of Health and Human Services*, 865 F.2d 320, 325 (D.C.Cir. 1989).

The non-moving party's opposition, however, must consist of more than mere unsupported allegations or denials and must be supported by affidavits or other competent evidence setting forth specific facts showing that there is a genuine issue for trial. *See* FED. R. CIV. P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The non-moving party is "required to provide evidence that would permit a reasonable jury to find" in her favor. *Laningham v. United States Navy*, 813 F.2d 1236, 1242 (D.C.Cir.1987). If the non-movant's evidence is "merely colorable" or "not significantly probative," summary judgment may be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 249–50, 106 S.Ct. 2505. To defeat summary judgment, a plaintiff must have more than "a scintilla of evidence to support his claims." *Freedman v. MCI Telecommunications Corp.*, 255 F.3d 840, 845 (D.C.Cir.2001); *see also Ben–Kotel v. Howard University*, 319 F.3d 532, 536 (D.C.Cir.2003).

### B. Privacy Act Overview

█ The Privacy Act "safeguards the public from unwarranted collection, main-

tenance, use and dissemination of personal information contained in agency records . . . by allowing an individual to participate in ensuring that his records are accurate and properly used." *Bartel v. Federal Aviation Administration,* 725 F.2d 1403, 1407 (D.C.Cir.1984). To that end, the Privacy Act prohibits disclosure of any individual's "record" that is contained in a "system of records" to another person without the individual's consent, subject to certain exceptions. *See* 5 U.S.C. § 552a(b). Section 552a(b) of the Privacy Act delineates permissible nonconsensual disclosures, which include disclosures required under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and disclosures made to either house of Congress, or its committees or subcommittees, for matters within those committees' jurisdiction. *See* 5 U.S.C. §§ 552a(b)(2), (b)(9). If an agency improperly discloses Privacy Act protected information in such a way as to have an "adverse effect" on an individual, that individual may bring a civil action against the agency. 5 U.S.C. § 552a(g)(1)(D). If the Court determines that the agency acted in an "intentional and willful" manner, a plaintiff is entitled to recover "actual damages." 5 U.S.C. § 552a(g)(4).

## C. Privacy Act System of Records

■ Under the Privacy Act, a "record" is information "about an individual" that is maintained by an agency and contains a person's name or other personal identifier. 5 U.S.C. § 552a(a)(4). A system of records is a group of records "under the control of an agency" from which information "is retrieved" by the name of the person or some other personal identifier. 5 U.S.C. § 552a(a)(5). Determining that a system of records exists from which the document at issue was retrieved is a prerequisite to a substantive Privacy Act claim. *See Henke v. United States Dep't of Commerce,* 83 F.3d 1453, 1459 (D.C.Cir.

1996) ("the determination that a system of records exists triggers virtually all of the other substantive provisions of the Privacy Act"); *see also Beaulieu v. IRS,* 865 F.2d 1351, 1352 (1st Cir.1989) (finding that an "all-out, basic requirement of the [Privacy] Act" and the "whole substance of the statute" is that information disclosed must come from a system of records).

■ According to the Office of Management and Budget ("OMB") guidelines, a system of records exists if: (1) there is an "indexing or retrieval capability using identifying particulars . . . built into the system"; *and* (2) the agency *"does, in fact, retrieve* records about individuals by some personal identifier." OMB Privacy Act Implementation Guidelines and Responsibilities ("OMB Guidelines"), 40 Fed.Reg. 28,948, 28,952 (July 9, 1975) (emphasis added). Department of the Navy Privacy Act regulations mirror those promulgated by the OMB. *See* 32 C.F.R. § 701.105(a)(1) ("[R]ecords must be retrieved by personal identifiers to become a system of records."). *See also Henke v. United States Dep't of Commerce,* 83 F.3d at 1460 ("[A] group of records should generally not be considered a system of records unless there is actual retrieval of records keyed to individuals."); *Bartel v. Federal Aviation Administration,* 725 F.2d at 1408 n. 10 ("To be in a system of records, a record must . . . *in practice* [be] retrieved by an individual's name or other personal identifier.") (emphasis added). The mere capacity to retrieve records by the name of an individual is not sufficient to create a system of records. *See Henke v. United States Dep't of Commerce,* 83 F.3d at 1460.

■ Defendant here asserts that the documents at issue were not retrieved from a system of records by reference to plaintiff or an individual officer's name. Instead, defendant asserts that the Information Paper was retrieved by reference

to the name of the requesting member of Congress and that the Query Responses and the Press Release were retrieved by reference to the ship's name. *See* Def.'s Mem. at 12. Plaintiff does not respond directly to these assertions by addressing the question of whether the Press Release or Query Responses were contained within or retrieved from a system of records. The Court therefore will assume that they were not.

■ Plaintiff correctly notes, however, that an agency's failure to acknowledge that it maintains a system of records will not protect the agency from statutory consequences if there is evidence that the agency in practice retrieves information about individuals by their names or personal identifiers. *See* Pl.'s Opp. at 19 (citing *Henke v. United States Dep't of Commerce*, 83 F.3d at 1461). He then goes on to assert that "based on his twenty years of experience as a Naval Officer and experience in dealing with Navy computer files," the Information Paper "*was retrievable* by searching for his name within the computer files of the relevant officers." Pl.'s Opp. at 19 (emphasis in original). As noted, however, mere retrievability—that is, the capability to retrieve—is not enough. *See supra* at 40. And plaintiff has offered no support for the proposition that Navy officials actually retrieved the Information Paper by his name or other personal identifier rather than merely having the capacity to do so. Plaintiff's assertion that it is "technically possible" to retrieve the Information Paper by searching for his name is insufficient to meet the requirement that the data was retrieved in such a manner. *See Henke v. United States Dep't of Commerce*, 83 F.3d at 1460.

■ The conclusion that the documents at issue were not themselves retrieved from a system of records does not end the analysis. Plaintiff also asserts that underlying documents, from which the documents were compiled, were contained within a system of records—namely, plaintiff's Official Military Personnel File and the record of his NJP hearing. *See* Compl. ¶¶ 26–27, 31–32. Defendant does not dispute this point. *See* Def.'s Mem. at 10. In such circumstances, the court of appeals has concluded that an improper disclosure has occurred. *See Bartel v. Federal Aviation Administration*, 725 F.2d at 1409. Specifically, the court in *Bartel* concluded that the disclosure of letters that included sensitive information that itself was found in a system of records was a disclosure within the meaning of the Privacy Act, even though the underlying records themselves were never released and the agency official releasing the information claimed knowledge of the facts disclosed independent of any record. *See id.* Under *Bartel*, the Court must find in these circumstances that information contained in a system of records was disclosed. The substantive provisions of the Privacy Act therefore are triggered, and the Court turns to the Privacy Act and its exceptions to see whether defendant's disclosure of the information in question nevertheless was permissible.

### D. FOIA Exception to the Privacy Act

Defendant asserts that it properly disclosed information about Commander Chang because the Privacy Act allows for nonconsensual disclosure of information that has been retrieved from a protected record under one of the twelve statutory exceptions to the Privacy Act. *See Bartel v. Federal Aviation Administration*, 725 F.2d at 1408. In this case, the defendant invokes two such exceptions: the FOIA exception and the congressional exception.

■ Defendant first asserts that the information that was released to the media in the form of the initial Press Release and during subsequent telephonic briefings and

press conferences consistent with the Query Responses was properly disclosed under Exception (b)(2) of the Privacy Act. *See* Def.'s Mem. at 12. Exception (b)(2) of the Privacy Act excepts from the Act's coverage disclosure of records for which release would be "required by [the FOIA]." 5 U.S.C. § 552a(b)(2).[2] The D.C. Circuit has interpreted the term "required" to mean that an agency may not release Privacy Act material unless the agency has a FOIA request in hand and is required by the FOIA—not just permitted—to release the record. *See Bartel v. Federal Aviation Administration,* 725 F.2d at 1412 ("Only when an agency is faced with a FOIA request for information that is not within a FOIA exemption, and therefore has no discretion but to disclose the information, does the FOIA exception to the Privacy Act come into play."). In this case, defendant concedes that the Navy had no FOIA request in hand for the records at issue. *See* Def.'s Mem. at 13.

The OMB guidelines, however, "suggest a possible exception" to this rule for "information that traditionally is released by an agency to the public without a FOIA request." *Bartel v. Federal Aviation Administration,* 725 F.2d at 1413; *see* OMB Guidelines, 40 Fed.Reg. at 28954. The defendant asserts that this exception applies here because the Navy traditionally releases information that would be releasable under the FOIA to the press without a formal FOIA request. *See* Def.'s Mem. at 13. Specifically, like the OMB Guidelines, the Navy's regulations instruct Navy personnel generally to "respond promptly to requests received from news media representatives through public information

channels, if the information is releasable under FOIA." 32 C.F.R. § 701.11(p). According to Navy regulations, "[t]his eliminates the requirement to invoke FOIA and may result in timely information being made available to the public." *Id.; see also* Def.'s Mem., Ex. N, Secretary of the Navy's Instruction on the Privacy Act ("SECNAVINST") 5720.44A ¶ 0701a(1)(d) ("[R]ecords requested through public information channels by news media representatives that would not be withheld if requested under the FOIA should be released upon request."). Assuming that *Bartel* controls, the question then becomes whether the information released by defendant to members of the press would have been releasable under the FOIA, or if it fell under one of the FOIA exemptions.[3]

 Exemption 6 of the FOIA permits the government to withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Under this provision, the threshold question is whether the requested information is contained in personnel, medical or "similar" files. *See United States Dep't of State v. Washington Post Co.,* 456 U.S. 595, 600, 102 S.Ct. 1957, 72 L.Ed.2d 358 (1982) ("[T]he phrase 'similar files' was to have a broad, rather than a narrow meaning."); *see also Nat'l Ass'n of Home Builders v. Norton,* 309 F.3d 26, 32 (D.C.Cir.2002); *Billington v. United States Dep't of Justice,* 233 F.3d 581, 586 (D.C.Cir.2000); *Ripskis v. Dep't of Housing and Urban Development,* 746 F.2d 1, 3 (D.C.Cir.1984). If the information sought is contained in such files, the Court must

---

**2.** Such disclosure encompasses release of the contents of a record "by any means of communication," 5 U.S.C. § 552a(b), and not just "the mere physical dissemination of records (or copies)." *Bartel v. Federal Aviation Administration,* 725 F.2d at 1408.

**3.** In *Bartel,* the court of appeals did not decide expressly whether the exception in the OMB Guidelines for information traditionally released to the public without an agency request "is proper, or if so what its exact scope may be." *Bartel v. Federal Aviation Administration,* 725 F.2d at 1413.

assess "whether the information is of such a nature that its disclosure would constitute a clearly unwarranted privacy invasion." *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d at 32 (citing *United States Dep't of State v. Washington Post Co.*, 456 U.S. at 598, 102 S.Ct. 1957; *New York Times Co. v. NASA*, 920 F.2d 1002, 1004 (D.C.Cir.1990) (*en banc* )).

 To determine what constitutes a "clearly unwarranted privacy invasion," the Court must balance the individual's interest in privacy against the public interest in disclosure, keeping at the forefront the FOIA's "basic policy of opening agency action to the light of public scrutiny." *See Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d at 32 (quoting *United States Dep't of State v. Ray*, 502 U.S. at 175, 112 S.Ct. 541 (internal quotation marks omitted)). The "public interest" inquiry is whether disclosure would "contribute significantly to public understanding of the operations or activities of government." *United States Dep't of Defense v. Fed. Labor Relations Authority*, 510 U.S. 487, 495, 114 S.Ct. 1006, 127 L.Ed.2d 325 (1994) (quoting *United States Dep't of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 749, 775, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989)). Throughout this analysis, the burden remains on the government to justify any withholdings, since "under Exemption 6, the presumption in favor of disclosure is as strong as can be found anywhere under the Act." *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d at 32 (quoting *Washington Post Co. v. United States Dep't of Health and Human Servs.*, 690 F.2d 252, 261 (D.C.Cir.1982)). *See also Ripskis v. Dep't of Housing and Urban Development*, 746 F.2d at 3 ("[T]he 'clearly unwarranted' language of Exemption 6 weighs the scales in favor of disclosure.").

Navy Privacy Act regulations outline a four-step process for evaluating whether information is exempt from disclosure and must be withheld under Exemption (b)(6). The first step is "to determine whether a viable personal privacy interest exists in these records involving an identifiable living person." The second step is "to consider how disclosure would benefit the general public in light of the content and context of the information in question." The third step is "to determine whether the identified public interests qualify for consideration." The fourth step is "to balance the personal privacy interests against the qualifying public interest." 32 C.F.R. 701.112(b)(2)(iii). The regulations further detail numerous factors that must be considered in applying the four-step process, including: the nature of the information to be disclosed; the importance of the public interest served; the probability of further disclosure which may result in an unwarranted invasion of personal privacy; the sensitivity of the information; the newsworthiness of the individual to whom the information pertains; the passage of time since the event which is the subject of the record; and the degree to which the information is already in the public domain or known to the requester. *See* 32 C.F.R. § 701.112(b)(2)(iii). In this instance, the Navy concluded that balancing all of these factors weighed in favor of the disclosures regarding Commander Chang to the media. The Court agrees.

 An individual does have a privacy interest in keeping employment history, job performance evaluations and information as to disciplinary proceedings confidential. *See Cochran v. United States*, 770 F.2d 949, 956 (11th Cir.1985); *Stern v. FBI*, 737 F.2d 84, 91 (D.C.Cir.1984). The public has a competing interest, however, in knowing the identities of disciplined government officials "in order to hold the governors accountable to the governed." *Stern v. FBI*, 737 F.2d at 92. In the

military context, at least one circuit has found that the public interest in " 'whether public servants carry out their duties in an efficient and law-abiding manner' " outweighs an officer's privacy interest in keeping his NJP proceedings confidential. *Cochran v. United States*, 770 F.2d at 956 (quoting *Columbia Packing Co. v. United States Dep't of Agriculture*, 563 F.2d 495, 499 (1st Cir.1977)) (holding that the Army's issuance of a press release concerning a major general's nonjudicial punishment hearing was not a violation of the Privacy Act). Under the applicable Navy regulations, while information regarding a NJP proceeding is "generally not releasable," such information should be disclosed pursuant to a FOIA request when "the facts leading to a nonjudicial punishment are particularly newsworthy or the case involves a senior official abusing the public trust through office-related misconduct." 32 C.F.R. § 701.112(b)(2)(viii)(D); *see* Def.'s Mem., Ex. M, Manual of the Judge Advocate General ("JAGMAN") ¶ 0509.

 It is undisputed that the collision between Commander Chang's ship and the *Saudi Riyadh* merchant vessel was a significant newsworthy event and that plaintiff was the commanding officer of the *Radford*. *See* Compl. ¶¶ 2, 3, 28. The *Radford* incident led to an investigation by the National Transportation Safety Board, two suits in admiralty involving the United States, an internet website providing pictures of the damage and substantial media coverage. *See* Def.'s Mem. at 13–14 (citing numerous national articles); *see id.*, Ex. P.

(news articles). The release of the information about disciplinary actions taken against Commander Chang therefore was very much in the public interest and complied with Navy regulations allowing for disclosure when the facts leading up to nonjudicial punishment are particularly newsworthy. *See* 32 C.F.R. § 701.112(b)(2)(viii)(D). The Court finds that the public interest in the information outweighs any privacy interests protected under Exemption 6. The information therefore would be releasable under the FOIA. Because Navy regulations provide that the disclosure of information "releasable" under the FOIA does not violate the Privacy Act, the Navy's release of NJP information to the media in the initial Press Release and subsequent briefings using the Query Responses did not violate plaintiff's rights under the Privacy Act.

Plaintiff argues that the Navy's assertion that the public interest in the collision justified disclosure of the disciplinary action taken against Commander Chang is disingenuous because the Navy withheld the names and specific results of punishment of all the other officers on whom nonjudicial punishment was imposed as a result of the collision. *See* Pl.'s Opp. at 27.[4] The Court concludes that such a determination was not improper, and that plaintiff's position as commander of the ship in a high-profile collision justifies defendant's release of plaintiff's identifying information while withholding information about lower-level officers. In similar circumstances, the court of appeals has up-

---

4. Plaintiff also claims that defendant did not properly balance plaintiff's privacy concerns against the public interest because the Navy "vigorously resisted public disclosure" of the same information in admiralty litigation. Pl.'s Opp. at 27; *see* Pl.'s Opp., Ex. 6, *In re National Shipping Co. of Saudi Arabia,* Civil Action No. 99–0223, Stipulation and Order (E.D.Va. Nov. 22, 1999). The fact that the Navy sought to prevent the release of entire records pertaining to NJP proceedings for various members of the United States Navy in other litigation does not effect the analysis here of whether the particular information released about Commander Chang through press releases and the Information Paper was releasable under the FOIA, given the Court's conclusion regarding the newsworthiness of the incident and the level of the official involved.

held such an exercise of agency discretion in releasing information concerning a high-level official while not releasing information about lower-level officials stemming from the same incident. *See Stern v. FBI* 737 F.2d at 92–94 (finding that the FBI was required under the FOIA to disclose to a requesting news reporter the name of a Special Agent in Charge involved in a cover-up incident while allowing the FBI to withhold the names of two lower-level employees involved in the same incident). Indeed, the Eleventh Circuit has gone so far as to state that deletion of identifying information is "inappropriate in the case of a high-ranking official," since such information is "crucial to the public's interest in holding such officials accountable *to* the public and deterring others from similar behavior." *Cochran v. United States,* 770 F.2d at 956 (distinguishing less serious misconduct by low-level agency employees because generally there is not sufficient public interest in such information to outweigh the privacy interests of the employee).

### E. Congressional Exception to the Privacy Act

Defendant next asserts that disclosure of the Information Paper was proper under the "congressional exception" to the Privacy Act, under which disclosures "to either House of Congress, or, to the extent of matter within its jurisdiction, any committee or subcommittee thereof, any joint committee of Congress or subcommittee of any such joint committee" are permitted without the consent of the individual to whom the records pertain. 5 U.S.C. § 552a(b)(9). In this case, the defendant claims that Senator John Warner and Rep-resentative James Moran requested the information contained in the Information Paper "in their capacities as Chairman of the Senate Armed Services Committee (SASC) and member of the House Committee on Appropriations, respectively," and that disclosure therefore was proper under the congressional exception. Def.'s Mem. at 15; *see also* Def.'s Mem., Ex. I, Declaration of Commander David M. Morriss, JAGC, U.S. Navy ("Morriss Decl.") ¶ 2; Ex. J, Declaration of Commander John D. Little, USN ("Little Decl.") ¶ 2.[5]

Plaintiff counters that the Information Paper was released to Senator Warner and Representative Moran in their individual capacities in order to respond to constituent inquiries rather than to the legislators in their capacities as committee members, and that such releases are not protected under the congressional exception. *See* Compl. ¶¶ 29–30. According to plaintiff, the requests for information from Senator Warner and Representative Moran were not made on committee letterhead, did not reference a committee in the request and were not made by committee staff members. *See* Pl.'s Opp. at 25. Instead, plaintiff contends, the requests were made by staff members of the individual Congress members to assist them in answering constituent inquiries. In support of his position, plaintiff cites to an internal Navy memorandum describing Senator Warner's request in which the justification offered for the Information Paper is the many letters received by Senator Warner's office from constituents questioning the incident. *See* Compl. ¶¶ 35, 39; Pl.'s Opp., Ex. 4, Memorandum for Director, Department of

---

**5.** If defendant's characterization is accurate, the Privacy Act clearly does not protect against disclosure to members of Congress in their capacity as committee members. *See* 5 U.S.C. § 552a(b)(9); 32 C.F.R. § 701.112(b)(9)(iii)(C); *Devine v. United States,* 202 F.3d 547, 551 (2d Cir.2000) (find-ing that a letter disclosing information from a system of records that was sent to a Congress member "in his official capacity as a member of the Subcommittee, not as an *individual* member of Congress," fell "squarely within the ambit of § 552a(b)(9)") (emphasis in original).

the Navy Program Information Center (DONPIC) ("Baggett Memo").

In support of his argument, plaintiff incorrectly asserts that the Navy's own regulations prohibit release of Privacy Act records to individual members of Congress in response to constituent inquiries. *See* Pl.'s Opp. at 26 (citing JAGMAN ¶ 0518f). This assertion is based on a summary of disclosure exceptions listed in the Manual of the Judge Advocate General. The introductory paragraph immediately preceding the list of exceptions to which plaintiff refers, however, specifically directs readers to the Secretary of the Navy's Instruction on the Privacy Act, SECNAVINST 5211.5D, for a "complete discussion" of the exceptions. *See* JAGMAN ¶ 0518.

 According to Navy Instruction 5211.5D, as codified in the Code of Federal Regulations, a "Blanket Routine Use" has been established permitting disclosure from a system of records to individual members of Congress that make inquiries on behalf of individuals who are the subjects of such records. *See* SECNAVINST 5211.5D(9)(c); 32 C.F.R. § 701.112(b)(9)(iii). If constituent inquiries are made on behalf of individuals "other than the record subject" as they were here, Navy personnel should provide "only that information releasable under [FOIA]" and must "[a]dvise the Member of Congress that the written consent of the record subject is required before additional information may be disclosed." SECNAVINST 5211.5D(9)(c)(3); 32 C.F.R. § 701.112(b)(9)(iii)(C). Thus, even if all justifiable inferences are drawn in favor of plaintiff and Privacy Act protected information was released to Congress members to answer constituent inquiries, that alone

is not enough to defeat defendant's motion for summary judgment. Under the relevant Navy regulations, the plaintiff further must prove that the information provided to Congress members acting on behalf of constituents would not have been releasable under the FOIA. As discussed in Section II(D), *supra*, however, the results of Commander Chang's nonjudicial punishment proceedings were releasable under the FOIA. Though more information was released in the Information Paper than in the Press Release and Query Responses regarding the nature of plaintiff's dereliction of duty charges, *see* Def.'s Mem., Ex. A, Department of the Navy Information Paper at 2, the additional information is not enough to shift the balance in favor of nondisclosure.

Balancing all of the factors outlined in the Navy regulations governing the FOIA exception to the Privacy Act, *see* 32 C.F.R. 701.112(b)(2)(iii), the Court concludes that disclosures to Senator Warner and Representative Moran—even if only for the purpose of addressing constituent inquiries—did not violate plaintiff's rights under the Privacy Act. Accordingly, the Court grants defendant's motion for summary judgment.

F. *Plaintiff's Rule 56(f) Motion*

 The Court denied plaintiff's Rule 56(f) motion for leave to conduct discovery by separate Order issued September 30, 2003. Given that plaintiff filed a thirty-page opposition with attachments to defendant's renewed motion for summary judgment, he has failed to show that he cannot obtain facts "essential" to support his opposition to the summary judgment motion without further discovery. *See* FED. R. CIV. P. 56(f).[6]

---

**6.** Plaintiff's Rule 56(f) motion for leave to conduct discovery is based on his allegation that three of defendant's employees were lying or were confused when they averred that Congress members acting in their capacities as committee members requested information about Commander Chang. Even if these allegations are true, this would not create a triable issue. *See* discussion at Section II(E), *supra*.

An Order and Judgment consistent with this Opinion shall be issued this same day.

SO ORDERED.

### *ORDER AND JUDGMENT*

For the reasons stated in the Opinion issued this same day, it is hereby

ORDERED that defendant's motion for summary judgment [37–1] is GRANTED; it is

FURTHER ORDERED that JUDG-MENT is entered for defendant; it is

FURTHER ORDERED that this Order and Judgment shall constitute a FINAL JUDGMENT in this case. This is a final appealable order. *See* FED. R. APP. P. 4(a).

SO ORDERED.